# CHARLESTON.

STATE *ex rel.* THOMPSON *v.* LOGAN COUNTY COURT *et al.*

Submitted September 9, 1924. Decided September 23, 1924.

1. MANDAMUS—*Supreme Court Will Issue Writ to Compel County Clerk to Provide Election Booths and Supplies, Where Clerk Failed to Discharge Mandatory Duty.*

   This court, exercising its discretion to award the peremptory writ of mandamus, will issue the writ to compel a county court to provide a sufficient number of suitable booths, supplies, and guard rails for the conduct of an election, as required by section 45, chapter 3, of the Code, where the return says respondent intends to perform that mandatory duty, and has directed its clerk by entry of record to place

an order with some reliable person or firm for such articles; it appearing by affidavit filed that no such order has been actually entered of record, and that heretofore respondent has promised to discharge that mandatory duty, but has failed to do so. (p. 213).

(Mandamus, 26 Cyc, p. 270).

2. SAME—*Costs not Awarded Against Respondent, Required to Provide Suitable Election Booths for Legal Election.*

In such case costs will not be awarded against respondent. (p. 213).

(Mandamus, 26 Cyc, p. 510 [1926 Anno]).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Original mandamus by the State, on the relation of Ernest Thompson, against County Court of Logan County and others.

*Writ awarded.*

*England, Hager & Hatfield,* for relator.
*Chafin & Estep,* for respondents.

LIVELY, JUDGE:

Thompson, the relator, a voter of Logan County, in his petition, duly sworn to, charges that respondent, the County Court of that County, for the last twelve years or more has failed and refused to provide election booths, furnished with proper counters or shelves and supplies, together with guard rails, for the proper conduct of the numerous elections held during that period, in that County, as required by Sec. 45, Chap. 3 of the Code; that by reason thereof secrecy of the ballot has been prevented, and election frauds have been perpetrated; that partisan workers at the elections have been permitted to remain in the election rooms and observe how the voters cast their ballots, the voters being compelled to vote without the means of secrecy accorded by law; that the County Court has, prior to the elections heretofore held, been requested to furnish these necessary election articles and has consistently promised to do so, but has, with like consistency, failed to do so, giving excuses that they had ordered them to be purchased but for want of time, or other frivolous excuse, they had not arrived; that unless the County Court is compelled to do so, it will furnish none of these articles for the

coming election and will continue to evade its duty under the pretense and promise that it desires to perform its duty and will perform it. He prays for a writ of mandamus to compel the Court to furnish and cause to be installed in each voting precinct in Logan County, to be used at the general election held on the 4th day of November next, booths or compartments and guard rails, as is required under section 45, of Chapter 3 of the Code of this State.

The County Court answers that it is not now its intention and never has been its intention to refuse to furnish and install these articles in the voting rooms of the precincts for use at the November election; and that it is now willing to comply with the law; and as evidence of its intention exhibits an order made by it, after the alternative writ had issued, directing its Clerk to forthwith place an order with some responsible person or firm for these articles, and have them on hand for distribution in time for the coming election; and it says that such equipment upon its arrival will be distributed and installed as required by law. It denies that heretofore it has unreasonably neglected its duty to furnish these articles and install them for prior elections; and says that on November 2, 1920, it bought and provided such equipment for sixty voting precincts from B. L. Holland under direction that he furnish all that was necessary for that election; *and from which it may be inferred* that a sufficient number of these articles were actually used at the 1920 election, and that some of these articles then made are yet on hand; but that whatever deficiency actually exists now, will be supplied. Respondent says it knows nothing of election frauds perpetrated heretofore and claimed to have been facilitated by the absence of these articles of election furniture, and denies any participation therein, if any were committed; expressing the belief that the commission of these frauds is more of imagination than of fact.

About fifty affidavits are filed in support of the petition; many of them detail that no guard rails or booths have heretofore been used, and that deputy sheriffs and others have been permitted to remain in the election rooms while the voters were casting their ballots with full opportunity to observe how and for whom the votes were cast; that many of

the voters have been threatened and intimidated in this way, resulting in election results contrary to the will of the voters. Others detail intimidations and confusions in the election rooms. Perhaps twenty-five or more affidavits say that no booths or guard rails have heretofore been used in Logan County. All the affidavits indicate that the failure to provide booths and guard rails was instrumental in causing the numerous frauds and vicious conduct detailed.

One affidavit is to the effect that affiant had examined the records of the County Clerk's Office since the purported order for booths &c. had been made directing the Clerk to procure them for the November, 1924 election, and there was no such order spread on the records; that there was a loose leaf on which such purported order was written, but it had not been directed to be entered by the Court or any member thereof.

With reference to the statement in the return that the County Court had for the 1920 general election procured and installed booths purchased from B. L. Holland, affidavits are filed showing that the Court was requested to furnish booths, but replied that they had been ordered and had not been delivered, and it was then too late to procure them. Affiant then proposed to have them furnished if the Court would authorize their procurement. The Court then entered the order ,and by efforts of affiant and others carpenters were assembled and the booths hurriedly made and delivered to the County Court at the court house in time for delivery to the precincts; but the next morning the booths so prepared had been thrown over a steep bank, forty or fifty feet high into the Guyan River; and a part of them bodily torn up and destroyed. Another affidavit says that no booths whatever were used in the 1920 election.

A demurrer is filed to the return, challenging its sufficiency. It is argued that the expressed intention of the County Court, evidenced by its order to its Clerk, is but a continuation of the evasive methods heretofore practiced by the County Court, and that unless the peremptory writ issues the duty will not be performed.

The evidence is rather conclusive that heretofore the respondent has failed to discharge this duty, although insistent

efforts have been made by the voters to achieve its performance. Can we say that it intends to do so now? We are not convinced that respondent does not intend to do so. It is to be presumed that public officers will faithfully discharge public duties. This presumption so far as past performance in respect to providing booths is overthrown by the affidavits. But as the duty is mandatory and it is clear that it has been consistently neglected for the past twelve years or more, although assurances were given that it would be performed, we can see no valid objection on the part of any one against the issuance of the writ now. It only commands respondent to do that which it says it intends to do, but which, as yet, it has not done. If respondent is in good faith, and we think it is, there can be no complaint on its part to the issuance of the writ. Objection to, or complaint of, its issuance would be inconsistent. Consistency is the corollary of good faith.

On the other hand, respondent and the numerous citizens and voters who are complaining will rest under the assurance that the duty will be performed. A persistent public demand for the performance of a duty designed to preserve free and unbiased expression of the voters will be met, so far as this court can do so. The purity of our elections should be preserved. They are designed to insure our liberties and promote the general welfare. All persons, especially public officers, should heartily join in any step designed to preserve the purity of the ballot. One who by acts, or omissions of duty, seeks to corrupt the electorate, defeat the will of the voters, and destroy public confidence in our system of government, makes a dagger thrust at the heart of liberty.

The writ will be awarded, but no costs taxed against respondent.

*Writ awarded.*